**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **BLUE RIDGE RISK PARTNERS, LLC**<br>1120c Professional Court<br>Hagerstown, Maryland 21740,<br><br>        Plaintiff,<br><br>    **v.**<br><br>**ANDREA WILLEM**<br>11717 Pleasant Walk Road<br>Myersville, Maryland 21773,<br><br>**and**<br><br>**ACNB INSURANCE SERVICES, INC.**<br>2526 West Liberty Road<br>Westminster, Maryland 21157,<br><br>        Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff Blue Ridge Risk Partners, LLC ("Blue Ridge" or the "Company"), by its undersigned counsel, files this Complaint against Defendants Andrea Willem ("Willem") and ACNB Insurance Services, Inc. ("ACNB") (collectively, "Defendants").

## NATURE OF ACTION

On the eve of resigning her employment with Blue Ridge, Defendant Andrea Willem clandestinely emailed herself voluminous, detailed, and proprietary customer lists and other compilations of customer information that are protectable trade secrets of Blue Ridge. Willem then began working for ACNB, a direct competitor to Blue Ridge, and proceeded to breach the clear and unambiguous non-solicitation and other restrictions in her employment agreement with Blue

Ridge. This lawsuit is necessary to put a stop to Ms. Willem's wrongful actions, compensate Blue Ridge for the damage Ms. Willem has already inflicted, and prevent future harm from occurring. Indeed, Willem has intentionally engaged in this improper behavior despite having been reminded multiple times of her contractual obligations to Blue Ridge.  Compounding matters, ACNB has condoned and/or endorsed Willem's behavior by allowing her (and it) to use and benefit from Willem's illegal conduct, even in the face of multiple cease and desist demand letters leaving no doubt that such behavior was unlawful.  Accordingly, Blue Ridge has been left no choice but to pursue judicial recourse for the wrongful deeds of Willem and ACNB.

## THE PARTIES

1.      Blue Ridge Risk Partners, LLC is a limited liability company organized under the laws of the State of Maryland, with its principal place of business in Hagerstown, Maryland.

2.      Andrea Willem is an individual domiciled in, and therefore a citizen of, the State of Maryland.

3.      ACNB Insurance Service, Inc. is a corporation incorporated under the laws of the State of Maryland, and formerly known as Russell Insurance Group, Inc., with its principal place of business in Westminster, Maryland.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Defendant Willem because she is a natural person domiciled in and a citizen of the State of Maryland.

5.      This Court has personal jurisdiction over Defendant ACNB because it is a citizen of the State of Maryland.  ACNB is incorporated under Maryland law and has its principal place of business in Maryland, and it conducts business in the State of Maryland.

6.     This Court has original subject matter jurisdiction over this dispute under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c), as Blue Ridge seeks relief under the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831 *et seq.*

7.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Blue Ridge's claims for breach of contract against of Willem, tortious interference with contract against ACNB, and misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act (MUTSA) against Willem, because such claims share a common nucleus of operative fact with the DTSA claim – namely,  unfair competition against a Maryland employer (Blue Ridge) by its former employee (Willem) and her subsequent employer (ACNB).

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Blue Ridge's claims arose in this District, or a substantial part of property that is subject of the action is situated in this District, specifically in Washington County, Maryland.

## **FACTS COMMON TO ALL COUNTS**

9.     Founded in 1926 and previously operating as Keller-Stonebraker Insurance, Inc., Blue Ridge is a leading insurance agency in the Greater Maryland area and is licensed in all 50 states.

10.     Blue Ridge has invested significant time, money, and other resources building deep and long-term business relationships and affiliations with its customers, which relationships are crucial to Blue Ridge's business model and competitive advantage.  Through its investment of resources, Blue Ridge has an intricate understanding of its customers' requirements, needs, habits and preferences.

11.     As a result of these and other efforts, Blue Ridge has accumulated other valuable knowledge and insights, including with respect to customer contact information, pricing, and financial details.

12.     In order to conduct its business and compete in the marketplace, Blue Ridge has developed and relies upon trade secrets and other confidential and proprietary information related to its business ("Confidential Information").

13.     This Confidential Information includes, but is not limited to: (i) identities of clients and other critical relationships; (ii) insurance policy terms, conditions, and rates; (iii) financial and performance data, analysis, books and records; (iv) familiarity with clients' risk characteristics; and (v) pricing and projections, including data and projections related to risk factors, pricing factors, market projections for particular risks, sales strategies, and profit margins.

14.     Blue Ridge has gone to great lengths to protect its Confidential Information by, among other things:

    a.   Implementing employment, restrictive covenant and other agreements, which describe Blue Ridge's Confidential Information and impose reasonable non-disclosure obligations;

    b.   Implementing policies and training employees on the importance of maintaining the confidentiality of Blue Ridge's Confidential Information;

    c.   Disclosing Blue Ridge's Confidential Information to only those persons who need to know such information in order to perform their work for Blue Ridge; and

d. Requiring employees to return all Blue Ridge-owned property *immediately* upon their termination of employment, including access to all Confidential Information.

15.     This Confidential Information, and the methods by which Blue Ridge protects it, affords Blue Ridge a competitive advantage over other insurance competitors.

**Willem's Employment with Blue Ridge**

16.     On or about January 1, 2007, Willem began working for Blue Ridge's predecessor, Keller-Stonebraker Insurance, Inc. ("Keller-Stonebraker") as a Producer.  In this role, Willem was expected to solicit insurance policies – both by persuading existing insured customers to renew their insurance policies, and by developing business through new customers – and to perform other duties as her supervisors required.

17.     At all times throughout her employment with Keller-Stonebraker and subsequently Blue Ridge, Willem was given access to a wide array of Confidential Information, including but not limited to price listings, customer contact information, financial statements, schedules, reports, and other books and records related to Blue Ridge's business model and ongoing ability to conduct a successful business.

18.     On or about December 7, 2009, Willem was presented with a Producer Employment Agreement (the "Employment Agreement") by her employer.  A true and accurate copy of this Employment Agreement is attached hereto as **Exhibit 1**.

19.     In Paragraph 9 of the Employment Agreement, Willem agreed that upon her termination of employment, she would "surrender to [Blue Ridge] all Confidential Information, including, but not limited to, all lists, charts, schedules, reports, financial statements, books and

records, and all copies thereof, to [Blue Ridge], and any and all other property belonging to [Blue Ridge] whatsoever which are in [her] possession or under his or her control."

20.     In Paragraph 16 of the Employment Agreement, Willem agreed that, "[i]n recognition of the fact that [Blue Ridge] is engaged in a personal service business involving confidential information and personal relationships with producing insurance agents and directly with insured, the success of which business is in large part due to the exclusive retention of such [C]onfidential [I]nformation and continuation of such personal relationships," she would be bound by certain covenants that she acknowledged "are reasonably necessary for the protection of [Blue Ridge], its successors and assigns, and may be enforced to the extent set forth herein or to such extent and in such fashion (including, but not limited to, equitable relief) as any court of competent jurisdiction may deem reasonable and proper."

21.     Of relevance here, Willem covenanted that, for a period of two (2) years after the end of her Employment Agreement, she would not, either directly or indirectly, do any of the following:

1. Solicit, attempt to obtain, accept or in any manner transact insurance business with, from, or on behalf of any of the Clients of Agency;

2. Support, promote or assist any person or entity in soliciting, attempting to obtain or accepting insurance business with, from or on behalf of any Clients of Agency;

3. Invest in the capital stock or otherwise acquire any ownership interest in any person or entity other than Agency (or a publicly traded company in which the Employee's total ownership interest is two percent (2%) or less) who or which is engaged, directly or indirectly, in any such solicitation, sale, support, or promotion in violation of Section 16.b.1 or 2 above;

4. Request or advise any of the Clients of Agency to withdraw, non-renew, terminate, curtail, alter or cancel his or her business with Agency;

5. Induce any employee or independent contractor of Agency to terminate his or her employment or contract with Agency in order to become employed by or associated with Employee in a business that would be in violation of any of the covenants set forth in this Section 16.

22.     For purposes of the covenants in the preceding paragraph, "Clients" is defined to include any "person, firm, company or organization who or which is a customer of or account on the books of" Blue Ridge and whom Willem solicited within twelve (12) months prior to the date of her termination; any other such customer or account solicited by other employees within twelve (12) months prior to the date of Willem's termination; or any other such customer or account on Blue Ridge's books within two (2) years prior to the date of Willem's termination.

23.     Willem accepted the terms of the Employment Agreement by signing it. *See* **Ex. 1** at p. 6. The Employment Agreement is valid and enforceable.

24.     But for her employment with Keller-Stonebraker and subsequently through her employment with Blue Ridge, Willem would not have had access to, or otherwise obtained, Blue Ridge's Confidential Information.

25.     Throughout her employment, Blue Ridge also invested significantly in Willem's development as an insurance producer. Among other things, Blue Ridge provided financial support for Willem's marketing and business development efforts to attract and retain customers of Blue Ridge and also introduced Willem to potential and existing customers of Blue Ridge. But for her employment with Keller Stonebraker and subsequently through her employment with Blue Ridge, Willem would not have been afforded these opportunities to develop and maintain relationships with Blue Ridge customers.

**Willem Absconds With Blue Ridge's Confidential Information and Solicits Numerous Blue Ridge Customers and Accounts with ACNB's Support.**

26.     In August 2021, Willem resigned her employment with Blue Ridge.

27.     Just days prior to her departure from Blue Ridge, Willem forwarded significant amounts of Blue Ridge's Confidential Information to a personal email account.

28.     In one such instance, Willem improperly emailed herself an omnibus Production Report in which Blue Ridge had assembled in one location massive amounts of highly sensitive information about all of the Blue Ridge customers assigned to Willem. Part of this spreadsheet was a "20/40/40" report that listed the premium amounts paid by these customers and the agency commissions that Blue Ridge received on their accounts, and grouped the customers into the categories of "top 20%," "middle 40%," and "bottom 40%." Another section of the spreadsheet identified the expiration dates for the policies of these customers.

29.     Willem included this omnibus Production Report as an attachment to an email that also included attachments of personal photos and documents, in an effort to conceal her improper activity.

30.     At around the same time, and close to her departure from Blue Ridge, Willem also forwarded to her personal email a customer-specific Profit and Loss ("P&L") Statement showing, among other things, the customer's annual insurance costs, sorted by each type of insurance.

31.     Willem also sent herself completed Insurance Application forms showing, among other things, the customer's gross revenues, operating expenses, and other financial information, as well as their corporate operating structure and the terms of their existing insurance coverage.

32.     Willem forwarded the above-referenced Confidential Information from Blue Ridge's network to her personal account with full knowledge that she had no legitimate business need for doing so.

33.     The full-scale production reports and financial information with which Ms. Willem absconded is information that Blue Ridge compiled using significant resources and is the type of information that allows it to provide superior customer service to its customers.

34.     Willem resigned her employment with Blue Ridge to join ACNB.

35.     Upon information and belief, Willem has shared the aforementioned Confidential Information and trade secrets and other of Blue Ridge's Confidential Information with ACNB personnel and/or used such information and other of Blue Ridge's Confidential Information for her personal benefit and that of ACNB.

36.     On or about January 23, 2022, *i.e.*, approximately five (5) months after the end of Willem's employment with Blue Ridge, Blue Ridge was notified that one of its long-time customers and policyholders, Impact Maryland Real Estate, was cancelling its policy with Blue Ridge.

37.     Upon information and belief, Impact Maryland Real Estate transferred its business to ACNB almost immediately after January 23, 2022.

38.     Blue Ridge has reason to believe that Impact Maryland Real Estate exited its business relationship with Blue Ridge and began using ACNB as its insurance provider due to the efforts of Willem in her role as an employee of ACNB, which efforts ACNB tolerated and encouraged.

39.     On or about February 10, 2022, after having learned of Impact Maryland Real Estate being poached away from it, to ACNB, Willem was sent, and received, correspondence reminding Willem of her continuing confidentiality and non-solicitation obligations under her Employment Agreement with Blue Ridge.   A true and accurate copy of this February 2022 correspondence is attached hereto as **Exhibit 2**.

40.     Also on or about February 10, 2022, ACNB was sent, and received a "Cease and Desist Demand" letter sent on behalf of Blue Ridge (the "First Cease and Desist Demand").   In this First Cease and Desist Demand, Mark A. Westcott, in his role as ACNB's President & CEO, was advised that Willem was under confidentiality and non-solicitation obligations (which

obligations were quoted in the letter) stemming from her Employment Agreement with Blue Ridge.  A true and accurate copy of this February 2022 correspondence is attached hereto as **Exhibit 3**.

41.     In addition, the First Cease and Desist Demand also requested that ACNB "acknowledge in writing . . . its awareness of Ms. Willem's Employment Agreement and the restrictions contained therein[,]" as well as "confirm[ing] that ACNB . . . has not conspired with Ms. Willem to violate, and will not conspire with Ms. Willem to violate, any of the terms of the Employment Agreement[,]" by no later than February 18, 2022.  Ex. 3 at p. 2.

42.     Neither Mr. Westcott nor any other member of ACNB management responded to this First Cease and Desist Demand by the February 18, 2022 deadline, nor at any other time.

43.     On or about March 1, 2022, *i.e.*, approximately seven (7) months after the end of Willem's employment with Blue Ridge, Blue Ridge that another of its long-time customers and policyholders, Hi-Tech Fasteners, Inc., was cancelling its policy with Blue Ridge.

44.     Confidential and trade secret information about Hi-Tech Fasteners, Inc. was included in the information that Ms. Willem improperly sent to herself on the eve of her departure.

45.     Upon information and belief, Hi-Tech Fasteners, Inc. transferred its business to ACNB almost immediately after March 1, 2022.

46.     Blue Ridge has reason to believe that Hi-Tech Fasteners, Inc. exited its business relationship with Blue Ridge and began using ACNB as its insurance provider due to the efforts of Willem in her role as an employee of ACNB, which efforts ACNB tolerated and encouraged.

47.     On or about May 15, 2022, *i.e.*, approximately nine (9) months after the end of Willem's employment with Blue Ridge, Blue Ridge learned that Eric Verdi, the owner of Impact Maryland Real Estate, had moved his personal business such that ACNB was acting as his AOR.

48.     On or about September 27, 2022, after having learned of multiple additional accounts being poached away from it to ACNB, as described above, Willem was sent, and received, a second piece of correspondence again reminding Willem of her continuing confidentiality and non-solicitation obligations under her Employment Agreement with Blue Ridge.  A true and accurate copy of this September 27, 2022 reminder correspondence is attached hereto as **Exhibit 4**.

49.     Also on or about September 27, 2022, ACNB was sent, and received a second "Cease and Desist Demand" letter sent on behalf of Blue Ridge (the "Second Cease and Desist Demand").  In the Second Cease and Desist Demand, Mr. Westcott was reminded again that Willem was under confidentiality and non-solicitation obligations (which obligations were quoted in the letter) stemming from her Employment Agreement with Blue Ridge.  A true and accurate copy of this September 27, 2022 reminder correspondence is attached hereto as **Exhibit 5**.

50.     In addition, the Second Cease and Desist Demand also requested that ACNB "acknowledge in writing . . . its awareness of Ms. Willem's Employment Agreement and the restrictions contained therein[,]" as well as "confirm[ing] that ACNB . . . has not conspired with Ms. Willem to violate, and will not conspire with Ms. Willem to violate, any of the terms of the Employment Agreement[,]" by no later than October 3, 2022.  Ex. 5 at p. 2.

51.     Neither Mr. Westcott nor any other member of ACNB management responded to the Second Cease and Desist Demand by the October 3, 2022 deadline, nor at any other time.

52.     On or about March 1, 2023, *i.e.*, approximately eighteen (18) months after the end of Willem's employment with Blue Ridge, Blue Ridge was notified that another of its long-time customers and policyholders, SCL Corporation, was cancelling its policy with Blue Ridge.

53.     Confidential and trade secret information about SCL Corporation was included in the information that Ms. Willem improperly sent to herself on the eve of her departure.

54.     Upon information and belief, SCL Corporation transferred its business to ACNB almost immediately after March 1, 2023.

55.     Blue Ridge has reason to believe that SCL Corporation exited its business relationship with Blue Ridge and began using ACNB as its insurance provider due to the efforts of Willem in her role as an employee of ACNB, which efforts ACNB tolerated and encouraged.

56.     Also on or about March 1, 2023, *i.e.*, approximately eighteen (18) months after the end of Willem's employment with Blue Ridge, Blue Ridge was notified that another of its long-time customers and policyholders, Jacobs Contracting, was cancelling its policy with Blue Ridge.

57.     Confidential and trade secret information about Jacobs Contracting was included in the information that Ms. Willem improperly sent to herself on the eve of her departure

58.     Jacobs Contracting transferred its business to ACNB almost immediately after March 1, 2023.

59.     Blue Ridge has learned that Jacobs Contracting is using ACNB as its insurance provider and has reason to believe that Jacobs Contracting began using ACNB as its insurance provider due to the efforts of Willem in her role as an employee of ACNB, which efforts ACNB tolerated and encouraged.

60.     Blue Ridge also has reason to believe that Willem has contacted at least one member of its current sales staff and encouraged that employee to come join her at ACNB and thereby to compete against her former employer.

61.     As the foregoing paragraphs illustrate, in the approximately twenty (20) months since her employment with Blue Ridge ended, and despite the clear and unambiguous

confidentiality and non-solicitation obligations she was under stemming from that employment, Willem has consistently and repeatedly violated those obligations with impunity, and with the endorsement and approval (either explicit or tacit) of ACNB as her current employer.

**COUNT I**
**Misappropriation of Trade Secrets in Violation of**
**Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. §§ 1831 *et seq.***
**(Against Willem)**

62.     Blue Ridge incorporates Paragraphs 1 through 61 above as though fully restated herein.

63.     Blue Ridge is the owner of certain confidential and proprietary information, including the Confidential Information identified in Paragraphs 26 through 30, above, which information constitutes trade secrets within the meaning of Section 1839(3) of Title 18 of the United States Code, including but not limited to Blue Ridge's policy terms, pricing, margins, market projections, and sales strategies.

64.     Blue Ridge has taken reasonable measures to safeguard and prevent the improper disclosure of its trade secrets.

65.     Blue Ridge's trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

66.     Willem misappropriated Blue Ridge's trade secrets for her own competitive advantage and for the competitive advantage of ACNB.

67.     Willem acquired Blue Ridge's trade secrets by improper means and also used and disclosed Blue Ridge's trade secrets while knowing that the secrets were improperly acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

68.     Blue Ridge's trade secrets are related to products and services used in interstate commerce.  Blue Ridge provides its products and services to states other than Maryland (including West Virginia), and Willem, for her own benefit and that of ACNB, is pursuing activities competitive with Blue Ridge in states outside of Maryland while using Blue Ridge's trade secrets, which Willem first obtained in Maryland.

69.     The misappropriation of Blue Ridge's trade secrets by Willem was willful and malicious.

WHEREFORE, Blue Ridge respectfully requests that the Court enter judgment in its favor, award Blue Ridge monetary damages to compensate it for the actual loss and unjust enrichment caused by Willem's misappropriation of Blue Ridge's trade secrets; award Blue Ridge exemplary damages equal to twice the amount of the foregoing monetary damages; permanently enjoin Willem, and anyone acting in concert with her, from using, disseminating, or retaining any of Blue Ridge's Confidential Information and trade secrets; award Blue Ridge its reasonable attorneys' fees and costs; and grant other such relief as the Court deems just and proper.

### COUNT II
### Misappropriation of Trade Secrets in Violation of
### Maryland Uniform Trade Secrets Act (MUTSA), Md. Code, Comm. Law §§ 11-1201 *et seq.*
### (Against Willem)

70.     Blue Ridge incorporates Paragraphs 1 through 61 above as though fully restated herein.

71.     Blue Ridge is the owner of certain confidential and proprietary information, including the Confidential Information identified in Paragraphs 26 through 30, which information constitutes trade secrets within the meaning of Section 11-1201(3) of the Commercial Law Article of the Maryland Code, including but not limited to Blue Ridge's policy terms, pricing, margins, market projections, and sales strategies.

72.     Blue Ridge has taken reasonable measures to safeguard and prevent the improper disclosure of its trade secrets.

73.     Blue Ridge's trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

74.     Willem misappropriated Blue Ridge's trade secrets for her own competitive advantage and for the competitive advantage of ACNB.

75.     Willem acquired Blue Ridge's trade secrets by improper means and also used and disclosed Blue Ridge's trade secrets while knowing that the secrets were improperly acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

76.     The misappropriation of Blue Ridge's trade secrets by Willem was willful and malicious.

WHEREFORE, Blue Ridge respectfully requests that the Court enter judgment in its favor, award Blue Ridge monetary damages to compensate it for the actual loss and unjust enrichment caused by Willem's misappropriation of Blue Ridge's trade secrets; award Blue Ridge exemplary damages equal to twice the amount of the foregoing monetary damages; permanently enjoin Willem from using, disseminating, or retaining any of Blue Ridge's Confidential Information and trade secrets; award Blue Ridge its reasonable attorneys' fees and costs; and grant other such relief as the Court deems just and proper.

### COUNT III
**Breach of Contract**
**(Against Willem)**

77.     Blue Ridge incorporates Paragraphs 1 through 61 above as though fully restated herein.

78.     The Employment Agreement, including its nondisclosure and non-solicitation provisions, is a valid and legally enforceable contract between Blue Ridge and Willem, supported by adequate consideration and entered into freely by Willem without duress or compulsion.

79.     Willem's contractual obligations are reasonable in scope as necessary to protect Blue Ridge's legitimate business interests in, among other things, ensuring a stable workforce, safeguarding confidential information, and protecting longstanding customer relationships and other goodwill of the Company.

80.     Willem entered into the Employment Agreement as a condition of remaining employed by Blue Ridge, including the compensation therewith, and in exchange for the provision of Blue Ridge's Confidential Information, as well as access to and dealings with Blue Ridge's customer relationships.

81.     But for her employment with Blue Ridge, Willem would not have had access to, or otherwise obtained, Blue Ridge's protectable interests, including its Confidential Information, customer relationships and goodwill.

82.     Blue Ridge has fully performed and fulfilled its obligations under the Employment Agreement.

83.     Willem violates and continues to violate the Employment Agreement by engaging in at least the following conduct:

> a.   Soliciting and servicing Blue Ridge's customers—with whom Willem worked recently, and directly, while employed by Blue Ridge—on behalf of ACNB and for the purpose of selling insurance to those customers in direct competition with Blue Ridge; and

b. Misappropriating, failing to return and misusing Blue Ridge's Confidential Information for her personal benefit, and for the benefit of ACNB, without Blue Ridge's prior written consent.

84.     Willem further breached the covenant of good faith and fair dealing that was an inherent part of the Employment Agreement.

85.     To ensure that Blue Ridge can enjoy the benefit of its bargain, and given that Willem has consistently and repeatedly breached the foregoing obligations, the two (2) year effective period of these obligations should be equitably tolled, such that that period begins on the date the Court enters judgment in Blue Ridge's favor.

86.     The foregoing breaches have proximately caused Blue Ridge significant damages.

WHEREFORE, Blue Ridge respectfully requests the Court to enter judgment in its favor; enforce the nondisclosure and non-solicitation covenants in the Employment Agreement by ordering Willem to return all of Blue Ridge's Confidential Information to the Company and delete any and all copies of the same within her possession, custody, and/or control, and enjoining Willem from soliciting any Blue Ridge customer, account, or employee to do business with her and/or her employer for a period of two (2) years from the date judgment is entered; and award Blue Ridge compensatory damages in an amount in excess of $75,000, attorneys' fees, costs and expenses in amounts to be determined at trial, and such other relief as the Court deems just and proper.

## COUNT IV
### Tortious Interference with Contract
### (Against ACNB)

87.     Blue Ridge incorporates Paragraphs 1 through 61 above as though fully restated herein.

88.     The Employment Agreement, including its nondisclosure and non-solicitation provisions, is a valid and legally enforceable contract between Blue Ridge and Willem, supported by adequate consideration and entered into freely by Willem without duress or compulsion.

89.     ACNB has knowledge of the Employment Agreement between Blue Ridge and Willem, including knowledge that Blue Ridge enters into agreements with its employees that contain reasonable post-employment covenants, including nondisclosure and non-solicitation covenants.

90.     Despite being aware of Willem's post-employment obligations contained within her Employment Agreement with Blue Ridge, ACNB has employed and continues to employ Willem in roles that both violate the nondisclosure and non-solicitation obligations contained in that Employment Agreement and in which Willem is likely to utilize Blue Ridge's Confidential Information improperly for ACNB's benefit.

91.     ACNB has also allowed Willem to solicit and/or service Blue Ridge's customers and partners with whom Willem worked while employed at Blue Ridge in violation of the Employment Agreement and/or has failed to implement reasonable measures to ensure that Willem complies with her post-employment obligations under the Employment Agreement.

92.     ACNB's actions have interfered with, and procured the breach of, the Employment Agreement between Blue Ridge and Willem.

93.     As a proximate result of ACNB's conduct, Blue Ridge has sustained and will continue to sustain substantial damages.

WHEREFORE, Blue Ridge respectfully requests that the Court enter judgment in its favor and award Blue Ridge compensatory and punitive damages in excess of $75,000, in an amount to be proven at trial; award Blue Ridge further relief including but not limited to a constructive trust

and/or disgorgement of profits by ACNB; award Blue Ridge its attorneys' fees, costs, and expenses; and award such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Blue Ridge demands a trial by jury on all claims so triable.

Dated: April 10, 2023                              Respectfully submitted,


                                                   */s/ Alexander P. Berg*
                                                   Alexander P. Berg, Bar No. 18821
                                                   aberg@littler.com

                                                   LITTLER MENDELSON, P.C.
                                                   1800 Tysons Boulevard
                                                   Suite 500
                                                   Tysons Corner, VA  22102
                                                   Telephone:   703.286.3138
                                                   Facsimile:    703.552.0045

                                                   Richard Kienzler (*pro hac forthcoming*)
                                                   rkienzler@littler.com

                                                   LITTLER MENDELSON, P.C.
                                                   321 N. Clark St., Suite 1100
                                                   Chicago, Illinois 60654
                                                   Telephone:   312.795.3254
                                                   Fax:          312.372.7880

                                                   *Counsel for Plaintiff*
                                                   *Blue Ridge Risk Services, LLC*