IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BLUE RIDGE RISK PARTNERS, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-961 |
| ANDREA WILLEM, et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Andrea Willem's Partial Motion to Dismiss (ECF No. 15) and Defendant ACNB Insurance Services, Inc.'s ("ACNB") (collectively, "Defendants") Partial Motion to Dismiss (ECF No. 16). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motions.

### I.   BACKGROUND[1]

In January 2007, Willem began working for Keller-Stonebraker Insurance, Inc. ("Keller-Stonebraker"), Plaintiff Blue Ridge Risk Partners, LLC's ("Blue Ridge") predecessor. (Compl. ¶ 16, ECF No. 1). Willem was hired as a producer, a role in which she persuaded existing insured customers to renew their policies and attracted business from new customers. (Id.). Throughout her employment, Willem received access to information such as price listings, customer contact information, financial statements, and

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

other records related to Blue Ridge's business model. (Id. ¶ 17). On December 7, 2009, Willem signed an Employment Agreement ("the Agreement") with Keller-Stonebraker. (Id. ¶ 23; Agreement at 7, ECF No. 1-2).[2]

Section 16 of the Agreement provides that for a period of two years following the employee's termination, the employee will not directly or indirectly, on behalf of herself or another:

> 1. Solicit, attempt to obtain, accept or in any manner transact insurance business with, from, or on behalf of any of the Clients of Agency;
>
> 2. Support, promote or assist any person or entity in soliciting, attempting to obtain or accepting insurance business with, from or on behalf of any Clients of Agency;
>
> 3. Invest in the capital stock or otherwise acquire any ownership interest in any person or entity other than the Agency . . . who or which is engaged, directly or indirectly, in any such solicitation, sale, support, or promotion in violation of Section 16.b.1 or 2 above;
>
> 4. Request or advise any of the Clients of Agency to withdraw, non-renew, terminate, curtail, alter or cancel his or her business with Agency;
>
> 5. Induce any employee or independent contractor of Agency to terminate his or her employment contract with Agency in order to become employed by or associated with Employee in a business that would be in violation of any of the covenants set forth in this Section 16.

(Agreement ¶ 16(b)). The Agreement defines "Clients" to mean:

> [E]ach and every person, firm, company or organization who or which is a customer of or account on the books of Agency as of the Termination date or was a customer of or account on the books of the Agency within two (2) years prior to the

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

>> Termination Date or was solicited by Employee or other employee of Agency within twelve (12) months prior to the Termination Date.

(Id.).

Willem resigned from her employment with Blue Ridge in August, 2021. (Compl. ¶ 26). Thereafter, Willem began working for one of Blue Ridge's competitors, ACNB. (Id. ¶ 34). According to Blue Ridge, Willem "forwarded significant amounts of Blue Ridge's Confidential Information to a personal email account" a few days prior to terminating her employment. (Id. ¶ 27). Months after Willem's termination, multiple long-time Blue Ridge customers cancelled their policies and switched to ACNB. (Id. ¶¶ 36–37, 43, 47, 52, 56).

On April 4, 2023, Blue Ridge filed its Complaint against Defendants. (ECF No. 1). Blue Ridge makes three claims against Willem: misappropriation of trade secrets in violation of Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1831 et seq. (Count I); misappropriation of trade secrets in violation of Maryland Uniform Trade Secrets Act, Md. Code, Comm. Law §§ 11-1201 et seq. (Count II); and breach of contract (Count III). (Compl. ¶¶ 62–86). Blue Ridge also makes a single claim against ACNB: tortious interference with contract (Count IV). (Id. ¶¶ 87–93). Blue Ridge seeks injunctive relief and monetary damages. (Id. ¶¶ 69, 76, 86, 93).

Willem filed her Partial Motion to Dismiss as to Count III—the breach of contract claim—on May 4, 2023. (ECF No. 15). On May 5, 2023, ACNB filed a Partial Motion to Dismiss with respect to Count IV, tortious interference with contract. (ECF No. 16). On May 19, 2023, Blue Ridge filed an Opposition. (ECF No. 24). Subsequently, Willem and ACNB each filed a Reply on July 7, 2023. (ECF Nos. 29, 30).

## II.     DISCUSSION

### A.     **Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v.

4

Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

Willem moves to dismiss the breach of contract claim (Count III), and ACNB moves to dismiss the tortious interference with contract claim (Count IV). (Mem. Supp. Willem's Partial Mot. Dismiss ["Willem's Mot."] at 2, ECF No. 15-1; Mem. Supp. ACNB's Partial Mot. Dismiss ["ACNB's Mot."] at 2, ECF No. 16-1). The primary issue underlying both Willem and ACNB's Motions is whether Willem's Agreement with Blue Ridge is overbroad and unenforceable under Maryland law.[3]

   **1.     Breach of Contract Claim**

Willem argues that the restrictive covenants in her Agreement with Blue Ridge are unenforceable, and thus, the breach of contract claim should be dismissed. (Willem's Mot. at 5). To prevail in a breach of contract action, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001). Thus, if Blue

---

[3] The Court exercises supplemental jurisdiction over the breach of contract claim, and therefore applies the choice of law rules of the forum state. State Auto. Mut. Ins. Co. v. Lennox, 422 F.Supp.3d 948, 961 (D.Md. 2019). For Maryland breach of contract claims, courts generally apply the law specified in the contract. Cunningham v. Feinberg, 107 A.3d 1194, 1204 (Md. 2015). Here, the Court will apply Maryland law because the Agreement specifies that Maryland law governs "in all respects," including disputes about the validity of the contract. (Agreement ¶ 15).

Ridge's restrictive employment covenants are found unenforceable, and the Court cannot modify the covenants to make them enforceable, Blue Ridge's claim will fail as a matter of law. Allegis Grp., Inc., v. Jordan, No. GLR-12-2535, 2014 WL 2612604, at *5 (D.Md. June 10, 2014). To be considered enforceable under Maryland law, a restrictive employment covenant must meet four requirements: "(1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy." Seneca One Fin., Inc., v. Bloshuk, 214 F.Supp.3d 457, 461 (D.Md. 2016).

In this case, Blue Ridge has a legally protected interest in "ensuring that departing employees do not take advantage of the goodwill that they established for the employer with the employer's customers." Aerotek, Inc. v. Obercian, 377 F.Supp.3d 539, 547 (D.Md. 2019); see also Deutsche Post Glob. Mail, Ltd. v. Conrad, 116 F.App'x 435, 438 (4th Cir. 2004) ("Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers.").

Additionally, with respect to the third element of the restrictive covenant test, Willem faces no undue hardship because she may continue to work in the insurance industry. See Webb Mason, Inc., No. ELH-17-3016, 2018 WL 4077394, at *10 (D.Md. Aug. 27, 2018) (rejecting undue hardship argument where employee "can still work with direct competitors of [employer] and freely conduct business, as long as it does not do so with a customer it knew about directly from [employer.]") (internal quotations omitted)).

6

Finally, the restrictive covenants do not violate public policy as "the public has an interest in the enforcement of reasonable restrictive covenants[,]" specifically in businesses that depend "upon the development of good will through effective customer service." Intelus Corp. v. Barton, 7 F.Supp.2d 635, 642 (D.Md. 1998).

Accordingly, the second prong of the restrictive covenants test, whether the covenants in question are wider in scope than reasonably necessary to protect the employer's interest, is the only element in dispute. The Court will examine the two clauses at issue, the customer non-solicitation clause and the employee non-solicitation clause, below.

### a.   Customer Non-Solicitation Clause

A restrictive covenant's enforceability depends upon "the unique language of the covenant at issue," and "the specific facts of the case." Aerotek, 377 F.Supp.3d at 546. In terms of an agreement's overbreadth, the scope of its provisions may be no broader than reasonably necessary to safeguard an employer's legally protected interest. Id. at 547. Here, the disputed customer non-solicitation clauses state that for a period of two years following Willem's termination with Blue Ridge, Willem will not directly or indirectly, on behalf of herself or another:

1. Solicit, attempt to obtain, accept or in any manner transact insurance business with, from, or on behalf of any of the Clients of the Agency;

2. Support, promote or assist any person or entity in soliciting, attempting to obtain or accepting insurance business with, from or on behalf of any Clients of Agency . . . .

(Agreement ¶ 16(b)). The Agreement defines "Clients" to mean:

7

> [E]ach and every person, firm, company or organization who or which is a customer of or account on the books of Agency as of the Termination date or was a customer of or account on the books of the Agency within two (2) years prior to the Termination Date or was solicited by Employee or other employee of Agency within twelve (12) months prior to the Termination Date.

(Id.). Willem argues that the customer non-solicitation provision is overbroad for the following reasons: (1) the covenant restrictions encompass all of Blue Ridge's customers and insurance business regardless of whether Willem has herself engaged in any insurance activity with the customers, (2) the restrictions prohibit the passive acceptance of business, and (3) the restrictions apply to prospective and former customers. The Court will analyze each argument in turn. (Willem's Mot. at 7–12).

### i.       Provisions Apply to All Customers and Business

First, Willem contends that the non-solicitation restrictions are overbroad and unenforceable because they apply to all of Blue Ridge's customers and insurance business. (Willem's Mot. at 7). "Agreements that restrict former employees from soliciting all clients of a former employer, rather than only those with whom the former employer worked directly, are generally disfavored by Maryland courts." Paul v. ImpactOffice LLC, No. TDC-16-2686, 2017 WL 2462492, at *6 (D.Md. June 6, 2017). However, "Maryland has enforced restrictive covenants barring solicitation of all of an employer's clients." Ameritox, Ltd. v. Savelich, 92 F.Supp.3d 389, 399 (D.Md. 2015); see also Tuttle v. Riggs–Warfield–Roloson, Inc., 246 A.2d 588, 589 (Md. 1968) (upholding restrictive covenant preventing employee from "engaging either directly or indirectly, in any insurance

activities with customers of [employer.]"). Thus, courts must review non-solicitation clauses "with consideration of the specific facts and circumstances at issue." Paul, 2017 WL 2462492, at *7.

In Paul, this Court found the scope of the employer's restrictive covenant to be wider than reasonably necessary to protect the employer's interest. Id. The non-solicitation provision prevented the employee from:

> Solicit[ing] or accept[ing], directly or indirectly, the business of any customer or prospective customer of the Company, or its Affiliates, for the purpose of selling or distributing office products or services sold by the Company, or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

Id. at 5. In considering the specific facts of the case, the Court found that the covenant was not reasonably tied to the employer's interest in protecting customer goodwill because the employee was only one of twenty-six sales representatives and his customers generated less than five percent of the employer's sales. Id. at 7. Thus, the covenant covered a "significantly larger customer base than that with which [the employee] could have developed personal relationships," and served more of a purpose to restrict competition, as opposed to protecting goodwill. Id.

In contrast, in Allegis Group, this Court upheld a client non-solicitation provision as enforceable based on the specific facts and circumstances at issue. 2014 WL 2612604, at *8. In that case, the employer's agreement prohibited employees from:

> Approach[ing], contact[ing] or solicit[ing] any individual, corporation or other entity which, at any time within the two (2) year period prior to the date of termination of

9

> EMPLOYEE's employment, was a client or customer of [employer] in an attempt to:
>
> (a) enter into any business relationship with a client or customer of the [employer] if the business relationship is competitive with any aspect of [employer's] Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
> (b) reduce or eliminate the business such clients or customers conduct with [employer.]

Id. at *2. The Court found that the scope of the client non-solicitation provision was not wider than reasonably necessary to protect the employer's goodwill because subsection (a) was "tailored to the narrow area in which [the employee] was employed because it only applie[d] to business relationships that would be competitive with the specific aspects of 'AEROTEK's Business' that [the employee] supported." Id. at *8. Additionally, while the agreement's subsection (b) did not have the same narrowing language as subsection (a), the Court nonetheless upheld it because according to the specific facts of the case, it is likely the employee could have profited from his client relationships with prime contractors to solicit subcontractors of other offices with whom he had no contact. Id.

In the instant case, the language of Blue Ridge's Agreement is like the covenant described in Paul, as opposed to Allegis Group. In Paul, the agreement prohibited the defendant from "[s]olicit[ing] or accept[ing], directly or indirectly, the business of any customer or prospective customer of the Company, or its Affiliates," 2017 WL 2462492, at *5. Here, Blue Ridge's Agreement prevents Willem from "[s]olicit[ing], attempt[ing] to obtain, accept[ing] or in any manner transact[ing] insurance business with, from, or on behalf of any of the Clients of the Agency," which include "each and every person, firm,

10

company or organization who or which is a customer of or account on the books of Agency as of the Termination date." (Agreement ¶ 16(b)). Unlike the restrictive covenant in Allegis Group, Blue Ridge's non-solicitation provision does not limit the customer non-solicitation provision to those with whom the employee worked, or those that had a competitive business relationship with the company. 2014 WL 2612604, at *2. Thus, especially given that Blue Ridge does not allege facts regarding Willem's position within the company, her percentage of insurance sales, or her wide exposure to most of the company's clients, the Agreement is overbroad and unenforceable.

### ii. Provisions Prohibit the Acceptance of Business

Second, Willem argues that the client non-solicitation provisions are also overbroad because they prohibit the acceptance of business. (Willem's Mot. at 9). This Court has previously found that provisions may be deemed overbroad if they prohibit an employee from accepting business from any of the employer's customers. See Paul, 2017 WL 2462492, at *6. Restrictions on passive acceptance of business from an employer's customers are unreasonable because "an employer's protectable interest is in 'preventing an employee from using the contacts establishing during employment to pirate the employer's customers.'" Id. (quoting Halloway v. Faw, Casson & Co., 572 A.2d 510, 515 (Md. 1990) (emphasis added)).

Here, the Agreement explicitly bars Willem from passively accepting any insurance business from Blue Ridge clients. (Agreement ¶ 16(b)). Blue Ridge asserts that this contractual language is irrelevant because the alleged breach of contract is related to Willem's active solicitation of Blue Ridge customers, not passive acceptance of business.

11

(Joint Opp'n Partial Mots. Dismiss ["Opp'n"] at 12, ECF No. 24). Thus, Blue Ridge contends that the breaches alleged in the Complaint are appropriately tailored to the "protectable interest" identified in Paul. (Id.).

Blue Ridge's argument misses the mark because the non-solicitation provision is unenforceable as written. "In assessing the reasonableness of scope and duration [of a non-compete clause], a determination must be made based on the scope of each particular covenant itself" and "examination of the particular facts is not necessary [if] the clause is overly broad on its face." Medispec, Ltd. v. Chouinard, 133 F.Supp.3d 771, 774–75 (D.Md. 2015). Thus, the Court rejects Blue Ridge's argument which relies on the facts and circumstances of this particular case. The plain language of the Agreement says Willem may not "attempt to obtain, accept or in any manner transact insurance business with, from, or on behalf of any [Blue Ridge] Clients." (Agreement ¶ 16(b)). This clause is facially overbroad and not appropriately tailored to the company's legally protected interest, and thus it is unenforceable.

### iii.     Provisions Apply to Prospective Clients

Lastly, Willem asserts that the customer non-solicitation covenants are overbroad because they apply to Blue Ridge's prospective and former customers. (Willem's Mot. at 10). "Courts have found restrictive covenants that bar the solicitation of prospective customers overbroad and unenforceable because prospective customers have not yet conducted business with the employer, and therefore the employee has not generated any goodwill with the customer on the employer's behalf." Aerotek, 377 F.Supp.3d at 550. Courts looks to the specific language of the agreement to determine whether the non-

solicitation covenant encompasses prospective customers. See Seneca One, 214 F.Supp.3d at 464 (concluding that an employment agreement's inclusion "of all individuals who have 'been in contact with Seneca One' in its definition of 'Customers'" constituted prohibiting the solicitation of potential customers, rendering the agreement overbroad and unenforceable); Aerotek, 377 F.Supp.3d at 550 (finding that the company's employment agreement did not prohibit the solicitation of prospective customers where the agreement prevented communication "'with any individual, corporation or other entity which is a customer of AEROTEK' under certain circumstances.").

Here, Blue Ridge defines "Clients" as a person or business who or which "is a customer of or account on the books of to clients of the Agency within two (2) years prior to the Termination Date or was solicited by Employee or other employee of Agency within twelve (12) months prior to the Termination Date." (Agreement ¶ 16(b)) (emphasis added). Like in Aerotek, where the Court found that a reasonable person would likely understand "customer" to mean "someone who has conducted business with Aerotek," and thus an existing, rather than potential future client, 377 F.Supp.3d at 550, the language in the first clause of Blue Ridge's "Clients" definition similarly indicates that it extends solely to clients that have actually engaged in business with Blue Ridge. However, the last clause of the definition of "Clients" in the Agreement covers any person or company "who was solicited by [Willem] or other employee of [Blue Ridge] within twelve (12) months prior to Termination Date." (Agreement ¶ 16(b)). This may include prospective clients as the clause is not limited to "customer[s]" or "account[s] on the books" of Blue Ridge. (Id.). Rather, it extends to any person or company that any employee of Blue Ridge has solicited.

13

In its Opposition, Blue Ridge argues that the Court could engage in blue penciling to alter the Agreement's "Clients" definition. (Opp'n at 18–19). "'[B]lue pencil' excision of offending contractual language without supplementation or rearrangement of any language is entirely in accord with Maryland law." Fowler v. Printers II, Inc., 598 A.2d 794, 802 (Md.Ct.Spec.App. 1991). However, "[a] court can only blue pencil a restrictive covenant if the offending provision is neatly severable." Deutsche Post, 116 F.App'x at 439. Maryland courts cannot eliminate "the dominant language or words from a single-sentence restrictive covenant, leaving only a narrower example of the original, broader restriction." Id. at 440. Courts may only modify an employment agreement in circumstances where the restrictions are contained in a separate clause or separate sentence, rather than in situations where an employment contract only constitutes one promise indivisible in terms. Id.

> Blue Ridge proposes to modify the definition of "Clients" to mean:
>
>> [E]ach and every person, firm, company or organization who or which ~~is a customer of or account on the books of Agency as of the Termination date or was a customer of or account on the books of the Agency within two (2) years prior to the Termination Date or~~ was solicited by Employee ~~or other employee of Agency~~ within twelve (12) months prior to the Termination Date.

(Opp'n at 19). This provision constitutes a single indivisible promise not to solicit a multitude of different clients beyond merely those solicited by Willem, so it cannot be severed. See Deutsche Post, 116 F.App'x at 439 (demonstrating that when an "employment contract constitutes one promise indivisible in terms . . . not to engage in adverse activity[,]" the contract is unenforceable and ineligible for blue penciling.) Blue Ridge's

14

proposal removes 65% of the words within the provision and rewrites the clause, as opposed to merely removing a severable portion. If the Court were to allow this type of blue penciling, employers would have "no incentive to negotiate reasonable restrictive covenants in the first place." Id. at 441.

### b. Employee Non-Solicitation Clause

Blue Ridge's employee non-solicitation clause prohibits Willem from inducing "any employee or independent contractor of [Blue Ridge] to terminate his or her employment contract with [Blue Ridge] in order to become employed by or associated with [Willem] in a business that would be in violation of any of the covenants . . . in this Section . . . ." (Agreement ¶ 16(b)).

To be considered enforceable, an employee non-solicitation restrictive covenant must be no wider "in scope and duration" than reasonably necessary to protect an employer's interest. Allegis Group, 2014 WL 2612604 at *11. Additionally, employee non-solicitation restrictive covenants must be "specifically targeted at preventing former employees from trading on the goodwill they generated during their former employment." Id. at *9. In Allegis Group, this Court analyzed an employee non-solicitation clause that prevented an Aerotek employee from "soliciting current employees to provide services competitive with Aerotek," defining "Aerotek" to include the business's related companies, TEKsystems and Mentor 4. Id. The Court ultimately found the restriction to be too broad because no evidence indicated that the Aerotek employee generated goodwill with either of Aerotek's related companies. Id. In prohibiting the employee from soliciting

15

employees from those other two companies, the provision was not specifically targeted at prohibiting him from trading on his goodwill with other employees. Id.

Here, the non-solicitation clause is overbroad and enforceable because it is not limited to employees with whom Willem had directly engaged, and the clause's prohibition on soliciting independent contractors resembles the clause prohibiting the solicitation of Aerotek's "related companies" in Allegis Group. As in Allegis Group, where the court explained that no evidence demonstrated that the Aerotek employee "regularly interacted with TEKsystems or Mentor 4 employees at training sessions, conferences, or other meetings," 2014 WL 2612604 at *9, in this case, there are no allegations indicating that Willem interacted with independent contractors outside of Blue Ridge. Thus, the scope of Blue Ridge's employee non-solicitation clause is overbroad and unenforceable as a matter of law, and the Court will dismiss the breach of contract claim as to the employee non-solicitation clause.

### 2.  **Tortious Interference of Contract Claim**

In its Partial Motion to Dismiss, ACNB asserts that it did not interfere with the Agreement between Willem and Blue Ridge because the employee non-solicitation covenants are unenforceable as a matter of law. (ACNB's Mot. at 3). Under Maryland law,[4] a tortious interference of with contract claim requires: (1) the existence of an enforceable contract between a plaintiff and third party; (2) the defendant's knowledge of that

---

[4] For tort claims, Maryland law applies the law of the state where the tort or wrong was committed. Lewis v. Waletzky, 576 F.Supp.2d 732, 735 (D.Md. 2008), aff'd, 475 F.App'x 906 (4th Cir. 2012). Here, there is no dispute that the alleged wrong occurred in Maryland, so the Court applies Maryland law.

enforceable contract; (3) the defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff. Fowler, 598 A.2d at 802. ACNB adopts Willem's arguments pertaining to the unenforceability of the restrictive covenants contained in the Agreement. (ACNB's Mot. at 4). Thus, ACNB argues that Blue Ridge cannot meet all elements of the tortious interference with contract claim because no enforceable agreement existed between Willem and Blue Ridge. (Id. at 4–5).

For the reasons discussed above, the Agreement between Willem and Blue Ridge is overbroad and unenforceable as a matter of Maryland law. Therefore, the first element of the tortious interference of contract test cannot be met, and the Court will dismiss Blue Ridge's tortious interference claim.

### III.   CONCLUSION

For the foregoing reasons, Willem's and ACNB's Partial Motions to Dismiss for Failure to State a Claim are granted. (ECF Nos. 15, 16). Counts III and IV are dismissed, and ACNB is dismissed as a Defendant. Willem will answer the Complaint in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 19th day of March, 2024.

/s/
George L. Russell, III
United States District Judge